**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CLARA ANN REYNOLDS,

       Plaintiff,

v.                                 No. CV 15-766 CG

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* ("Motion"), (Doc. 20), filed January 20, 2016; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* ("Response"), (Doc. 24), filed April 28, 2016; and *Plaintiff's Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* ("Reply"), (Doc. 25), filed May 12, 2016.

On April 16, 2013, Clara Ann Reynolds filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning on August 1, 2010. (Administrative Record ("AR") 12).[1] Her applications were denied on July 11, 2013, (AR 104-111), and also upon reconsideration. (AR 112-117). Ms. Reynolds filed her request for a hearing before an Administrative Law Judge ("ALJ"), which was acknowledged on September 11, 2013 (AR 118-124); and a hearing was set

---

[1] This information comes from the Administrative Law Judge's opinion as the applications were not submitted as part of the AR.

for July 15, 2014 before ALJ Christopher H. Juge. (AR 140-160). At the hearing, Ms.

Reynolds testified and was represented by Michelle Baca.  (AR 25-39). Patricia A.

Knight, an impartial vocational expert ("VE"), also attended the hearing, but did not

testify. (AR 12). ALJ Juge issued his opinion on September 17, 2014, finding that Ms.

Reynolds was not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 19).

Ms. Reynolds then filed an application for review by the Appeals Council, (AR 7-8),

which was denied, (AR 1-6), making the decision of ALJ Juge the final decision of the

Commissioner of the Social Security Administration (the "Commissioner," and "SSA") for

purposes of this appeal.

Through new counsel, Francesca MacDowell, Ms. Reynolds argues that the ALJ:

(1) formulated a Residual Functional Capacity ("RFC") that is incomplete, conclusory,

and unsupported by substantial evidence; (2) erred by relying on the sporadic nature of

Ms. Reynolds' treatment in determining the RFC; (3) incorrectly applied the grids

without taking testimony from a VE; and (4) relied on improper factors to make the

credibility finding. (Doc. 20 at 3-4).

The Court has reviewed the Motion, the Response, the Reply, and relevant law.

In addition, the Court has meticulously reviewed and considered the entire

administrative record. Because the ALJ failed to properly analyze and weigh the

medical opinions in the record, the Court finds that the Motion should be **GRANTED**

and the case be **REMANDED** for further proceedings.

I.      **Standard of Review**

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the

2

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

3

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.    Background

Ms. Reynolds applied for DIB and SSI alleging problems with both of her knees, depression, and bipolar disorder. (AR 40). At step one, the ALJ determined that Ms. Reynolds had not engaged in substantial gainful activity since August 1, 2008, the alleged onset date. (AR 14). At step two, the ALJ concluded that Ms. Reynolds was severely impaired by osteoarthritis and obesity. (AR 14). At step three, the ALJ explained that he considered whether Ms. Reynolds' impairments met or satisfied any of the listed impairments. (AR 16). The ALJ determined that none of Ms. Reynolds' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 16).

The ALJ proceeded to step four. First, he analyzed Ms. Reynolds' subjective complaints of her psychological symptoms and physical impairments with the objective evidence in the record. (AR 17-19). The ALJ found that Ms. Reynolds' statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 17). The ALJ discussed Ms. Reynolds' self-reported daily activities, as well as reports from Ms. Reynolds' physicians and consultative examiners ("CEs"). (AR 17-19). The ALJ ultimately found that Ms. Reynolds has the RFC to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR 16).

The ALJ determined that Ms. Reynolds does not have any past relevant work. (AR 19). The ALJ categorized Ms. Reynolds, at the age of 40 on the alleged disability onset date, as a younger individual, with at least a high school education and English language proficiency. (AR 19). Considering her age, education, work experience, RFC,

and Medical-Vocational Rule 202.50, the ALJ found that there are jobs that exist in significant numbers in the national economy that Ms. Reynolds can perform. (AR 19). The ALJ ultimately concluded that Ms. Reynolds is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 19).

## IV.   Analysis

Ms. Reynolds argues that the ALJ: (1) formulated an RFC that is incomplete, conclusory, and unsupported by substantial evidence; (2) erred by relying on the sporadic nature of Ms. Reynolds' treatment in determining the RFC; (3) incorrectly applied the grids without taking testimony from a VE; and (4) relied on improper factors to make the credibility finding. (Doc. 20 at 3-4).

The Commissioner responds that the ALJ properly considered all of the evidence in the record. (Doc. 24 at 9). The Commissioner also argues that the ALJ reasonably determined that Ms. Reynolds' alleged disabling symptoms were not consistent with the evidence on the record. (Doc. 24 at 10-14). Finally, the Commissioner maintains that the ALJ properly concluded that Ms. Reynolds was not disabled. (Doc. 24 at 22-23).

### A.   *Requirement to Weigh All Medical Opinions in the Record*

Social Security Regulations require the ALJ to evaluate every medical opinion in the record, including the opinions of non-examining State agency physicians. *See* 20 C.F.R. § 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency

6

between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927 (c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, No. 06-6343, 244 Fed. Appx. 880, 884 (10th Cir. Aug. 8, 2007) (unpublished).

### B. The ALJ's Analysis of Medical Opinions in the Record

In his decision, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 16). The ALJ stated that he gave the "State agency opinion . . . some weight, but subsequent evidence reveals that the claimant has been even less candid about her drug use than the State agency and her medical sources thought." (AR 18). Additionally, he discussed some of the findings of the CEs, Dr. Robert Johnson, M.D., and Dr. John Koewler, Ph.D., but did not explain the weight he gave either of these opinions.

### 1. The Findings of Drs. Green and Rees

Dr. David P. Green, M.D., and Dr. Mary Lanette Rees, M.D., are State non-examining consultants that completed Physical Residual Functional Capacity Assessments of Ms. Reynolds based on her medical records. Dr. Green evaluated Ms. Reynolds' records at the initial disability level, while Dr. Rees evaluated her records at the reconsideration level.

Both doctors found that Ms. Reynolds has exertional limitations. In formulating her RFC, both doctors determined that Ms. Reynolds could: (1) occasionally lift and/or carry up to 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) sit for a total of six hours in an 8-hour work day; and (4) push and/or pull an unlimited amount in the work day. (AR 46-47, 80). Dr. Green found that Ms. Reynolds could stand and/or walk for a total of 2 hours. Dr. Rees opined that she could do the same for 4 hours. (AR 48, 80). The doctors additionally found that Ms. Reynolds had postural limitations, stating that she could: (1) occasionally climb ramps/stairs, kneel, crouch, and crawl; (2) never climb ladders/ropes/scaffolding; and (3) frequently balance and stoop. (AR 48, 80-81). Dr. Green further limited Ms. Reynolds to avoid concentrated exposure to extreme cold, wetness, and hazards, (AR 48-49); while Dr. Rees limited Ms. Reynolds to avoiding concentrated exposure to hazards. (AR 81).

The doctors agreed that Ms. Reynolds is limited to unskilled, sedentary work based on the physical RFC they formulated. (AR 52, 85). The regulations define "sedentary work" as work

> involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."

20 C.F.R. §§ 404.1567(a), 416.967(a). By comparison, light work requires

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b). Contrary to the ALJ's finding that Ms. Reynolds could perform light work, both doctors stated that Ms. Reynolds cannot perform her past

relevant work as a fast food worker because it requires light work. (AR 52, 85).

The Commissioner argues that even if the ALJ had accepted the doctors' limitations in full, Ms. Reynolds could still perform sedentary work, thus the ALJ would still have found that she was not disabled. (Doc. 24 at 19). This Court's role is limited to reviewing the decision of the Commissioner, not re-weighing the evidence nor substituting its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Therefore, the Court will not speculate as to whether Ms. Reynolds would be found disabled if the ALJ had accepted the doctors' opinions.

The Commissioner also maintains that the ALJ was not required to adopt all of the limitations described by these doctors because they were not supported by the record. (Doc. 24 at 17-18). While this proposition is generally the rule, it is not clear from the ALJ's opinion if the ALJ weighed the opinions of Dr. Green or Dr. Rees at all. Indeed, the ALJ states that "the State agency opinion is given some weight . . .[;]" however, the record contains six State agency opinions, two from examining CEs and four from non-examining CEs. From the opinion, the Court cannot surmise how the ALJ formulated his final RFC. The Court is unable to meaningfully review the ALJ's findings of these opinions, which is legal error. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that in the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence.").

2. *The Findings of Dr. Koewler*

Ms. Reynolds reported to Dr. Koewler, a CE, on June 19, 2013 for a disability

determination examination. (AR 256). Dr. Koewler reported that Ms. Reynolds appeared

to be "a reliable informant[,]" and found that Reynolds has "below-average intelligence,

perhaps in the borderline range . . . [and] appears to have chronic severe complex

psychiatric disorders including mood disorder, post-traumatic stress disorder, and

borderline personality disorder." (AR 258). He formulated an RFC, concluding that Ms.

Reynolds is markedly limited in her ability to (1) understand and remember detailed or

complex instructions; (2) carry out instructions; (3) work without supervision; and (4)

interact with the public, coworkers, and supervisors. She is moderately limited in her

ability to (1) understand and remember very short simple instructions; and (2) attend

and concentrate. Ms. Reynolds is at least moderately limited in her ability to adapt to

changes in the work place and could be mildly limited in her awareness of normal

hazards and appropriate reactions. Finally, Dr. Koewler opined that Ms. Reynolds could

be moderately limited in her ability to use public transportation. (AR 258).

Dr. Koewler diagnosed Ms. Reynolds with bipolar disorder, not otherwise

specified; post-traumatic stress disorder; insomnia; learning disability, not otherwise

specified; polysubstance dependence in reported full remission; and borderline

personality disorder. (AR 258). The doctor determined that even if Ms. Reynolds stays

sober, she would still have "severe psychiatric problems." (AR 258).

The ALJ appears to have completely dismissed Dr. Koewler's report, stating,

"[a]lthough the consultative mental status examination indicates marked and moderate

limitations, these appear based predominantly on the claimant's historical record." (AR

15). The ALJ added that the record does not contain "evidence of a recent psychiatric diagnosis or mental health treatment." (AR 15). Finally, the ALJ found that Ms. Reynolds "routinely" claimed that she had quit using drugs in the months before an examination, which the ALJ determined reduced her credibility. (AR 15).

Because most CEs perform one time examinations, the Tenth Circuit has held that while it may be appropriate to not accord the "conclusive weight of a treating medical-source opinion . . ., it is not by itself a basis for rejecting [the opinion] – otherwise the opinions of [CEs] would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Chapo v. Asture*, 682 F.3d 1285, 1291 (10th Cir. 2012). According to the Regulations, an examining medical source "is given particular consideration and entitled to more weight than a doctor's opinion derived from a review of the medical record." *Id.* (citing 20 C.F.R. §§ 404.1527(d)(1), 416927(d)(1); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)). Although an ALJ may discount or dismiss an examining source opinion, the ALJ must "provide specific, legitimate reasons for rejecting it." *Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

Both the ALJ and the Commissioner argue that Dr. Koewler's analysis is inconsistent with the medical record because Ms. Reynolds was not diagnosed with a mental disorder and does not have a history of mental health treatment. (AR 15; Doc. 24 at 16). However, the medical record shows that Ms. Reynolds discussed her history of depression with several of her doctors and was prescribed Wellbutrin. (AR 238-239, 269-271, 273-275, 278-280, 284, 286-288). Moreover, and as discussed *infra*, Dr. Koewler's findings are consistent with the findings of Dr. Chiang and Dr. Robinowitz.

11

The ALJ also failed to recognize Ms. Reynolds' statements that she could not afford treatment and did not have insurance, "which may be a legitimate reason for [her] failure to seek treatment." (AR 256, 260); *Miranda v. Barnhart*, No. 04-1500, 205 Fed. Appx. 638, 642 (10th Cir. Aug. 11, 2005) (unpublished). The Court is remanding this case for the ALJ to properly analyze and weigh the medical evidence; therefore, the ALJ should re-analyze Dr. Koewler's opinion in light of the full medical record and Ms. Reynolds' testimony.

3.  *The Findings of Dr. Chiang and Robinowitz*

Dr. Elizabeth Chiang, M.D., and Dr. Ralph Robinowitz, Ph.D., are State non-examining consultants that completed Psychiatric Review Techniques based on Ms. Reynolds' medical records. Dr. Chiang evaluated Ms. Reynolds' records at the initial disability level, and Dr. Robinowitz evaluated her records at the reconsideration level.

Both Dr. Chiang and Dr. Robinowitz diagnosed Ms. Reynolds with an organic mental disorder, bipolar affective disorder, post-traumatic stress disorder, learning disorder, polysubstance dependence in remission, and borderline personality disorder. (AR 44-45, 76-77). The doctors also completed a mental residual functional capacity assessment ("MRFC"), and both found that Ms. Reynolds is markedly limited in her ability to carry out detailed instructions. In addition, they concluded that she is moderately limited in her ability to: (1) carry out very short and simple instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or in proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (10) respond appropriately to changes in the work setting; and (11) set realistic goals to make plans independently of others. Finally, they opined that Ms. Reynolds is not significantly limited in her ability to: (1) understand and remember detailed instructions; (2) make simple work-related decisions; (3) be aware of normal hazards and take appropriate precautions; and (4) travel in unfamiliar places or use public transportation.

As with the opinions of Dr. Green and Dr. Rees, this Court cannot determine from the ALJ's opinion whether the ALJ weighed these MRFC findings in his decision. As discussed *supra*, The ALJ states that "the State agency opinion is given some weight . . .[,]" but the record contains six State agency opinions, two from examining CEs and four from non-examining CEs. The ALJ did not include any nonexertional limitations in his RFC that would account for the findings of Dr. Chiang and Dr. Robinowitz, which indicates that the ALJ rejected their findings wholly and without explanation. This leaves the Court unable to meaningfully review the ALJ's findings, which is legal error. *See Clifton*, 79 F.3d at 1009; *Threet v. Barnhart*, 353 F.3d at 1190.

### 4.  The Findings of Dr. Johnson and Dr. Tania D. Pence

Ms. Reynolds presented to Dr. Johnson, a CE, on June 20, 2013 for a disability determination examination. (AR 260). Ms. Reynolds reported to Dr. Johnson that she

could stand for 20 minutes at a time, but not for 8 hours in one day, walk on level ground for half a block, sit for 20 minutes at a time, and is unable to lift any weight. (AR 260-261). Dr. Johnson noted that Ms. Reynolds has "some crepitus of the knees with range of motion," and diagnosed her with bilateral knee pain. (AR 261-262). In addition to the physical diagnosis, Dr. Johnson found that Ms. Reynolds suffered from bipolar disorder and depression and had a "very flat affect." (AR 262). The ALJ did not explain the weight he afforded Dr. Johnson's assessment. The Commissioner admits that the ALJ did not assign any specific weight to Dr. Johnson's opinion, but states that Dr. Johnson did not provide any opinion in regard to Ms. Reynolds' functional limitations. (AR 18).

The record shows that Dr. Tania D. Pence, DO, saw Ms. Reynolds on July 8, 2014 due to Ms. Reynolds' complaint of bilateral knee pain. (AR 301-302). Dr. Pence performed a physical examination and found that Ms. Reynolds has "medial and lateral facet tenderness . . . medial and lateral joint line tenderness . . . [and] a positive McMurray's test." Dr. Pence reviewed an x-ray that was taken from an outside facility and found that it showed "moderate degeneration of the medial compartment . . . mild degeneration of the lateral compartment . . . spurring over the medial and lateral femoral condyles . . . patellofemoral joint space . . . moderate narrowing . . . [and] superior spurring appreciated." (AR 302). Dr. Pence diagnosed Ms. Reynolds with bilateral knee degenerative joint disease and recommended that she start a weight loss program, cortisone injections, and physical therapy. (AR 302). The ALJ did not discuss the weight he afforded Dr. Pence's findings.

14

An ALJ must consider all evidence in the record, although he is not required to discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10. However, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also Briggs*, 248 F.3d at 1239. In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion. *Clifton*, 79 F.3d at 1009.

Specifically, the SSRs require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). The Regulations define medical opinions as statements that reflect "judgments about the nature and severity of your impairment(s)." 20 C.F.R. 404.1527(a)(2). Mere collections of treatment notes, including subjective complaints and treatment prescribed, do not constitute medical opinions. *Eacret v. Barnhart*, No. 04-5062, 120 Fed. Appx. 264, 267 (10th Cir. Jan. 10, 2005); *Moua v. Colvin*, No. 12-5161, 541 Fed. Appx 794, 797 (10th Cir. July 30, 2013). Here, both doctors described the "nature and severity" of Ms. Reynolds' knee pain; however, the ALJ did not assign any weight to these opinions. It is not clear if the ALJ considered the opinions in formulating the RFC. *Clifton*, 79 F.3d at 1009; *Threet*, 353 F.3d at 1190. Because the Court is remanding the case for the ALJ to properly analyze and weigh the other medical evidence in the record, the Court recommends that the ALJ specifically analyze and weigh the opinions of Dr. Johnson and Dr. Pence.

C. <u>Ms. Reynolds' Request for an Immediate Award of Benefits</u>

Ms. Reynolds requests that the Court reverse the decision of the Commissioner

and remand the case for an immediate award of benefits. (Doc. 20 at 23). The decision of whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). To make this decision, the Court considers the length of time the matter has been pending and whether additional fact-finding would serve any useful purpose or merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, Ms. Reynolds' application for benefits has been pending since August 2013, which is not an unusual amount of time for a case that has been evaluated by an ALJ and the Appeals Council. Moreover, additional analysis by the ALJ is required. The Court cannot say that there is substantial and uncontradicted evidence in the record that indicates Ms. Reynolds is disabled. *See Hudman v. Astrue*, No. 1:08-cv-00643-RLP, at *17 (D.N.M. filed Apr. 16, 2009) (unpublished). Under these circumstances, the Court will take heed not to assume the role of fact-finder and substitute its judgment for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

For all of the foregoing reasons, the facts of this case do not necessitate an immediate award of benefits at this time. The Court therefore orders that Ms. Reynolds' request for an immediate award of benefits be denied.

## V.    Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly analyze and weigh the medical opinions of the medical sources in the record. On remand, the ALJ should properly analyze and weigh all of the medical opinions in the record. The Court does not decide any other issue raised by Ms. Reynolds, as these

matters are mooted by the proceedings conducted or the disposition reached on remand.

  **IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 20), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE